# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5684 | **DATE** | 1/30/2004 |
| **CASE TITLE** | WHITEHEAD vs. GATEWAY CHEVROLET | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion to strike and to dismiss plaintiff's first amended complaint [24-1] is granted. Count I is dismissed with prejudice. Count II is dismissed without prejudice. The issue of appropriate sanctions pursuant to Rule 37(b) for violation of the *Beene* protective order is referred to the assigned magistrate judge for a report and recommendation. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | FEB 2 date docketed | |
| | Docketing to mail notices. | | 35 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 1/30/2004 date mailed notice | |
| CB | courtroom deputy's initials | PW mailing deputy initials | |

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELIA M. WHITEHEAD, | ) |
| | ) |
| Plaintiff, | ) No. 03 C 5684 |
| | ) |
| v. | ) Suzanne B. Conlon, Judge |
| | ) |
| GATEWAY CHEVROLET, OLDSMOBILE, | ) |
| INC., CRAIG ANDREA, LEE DRYZBEK, and | ) |
| THOMAS OKIMOTO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angelia M. Whitehead ("Whitehead") sues Gateway Chevrolet, Oldsmobile, Inc. ("Gateway"), Craig Andrea ("Andrea"), Lee Dryzbek ("Dryzbek"), and Thomas Okimoto ("Okimoto") (collectively "defendants") for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) [Count I], and common law fraud [Count II]. Thereafter, this court ordered Whitehead to file a RICO case statement. In the interim, defendants moved to dismiss Whitehead's complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). In response, Whitehead filed a combined response to defendants' motion to dismiss and her RICO case statement. Defendants' motion, construed as a Fed. R. Civ. P. 12(b)(6) motion to dismiss, was granted, and Whitehead was given leave to file an amended complaint in order to incorporate the allegations from her RICO case statement.

Defendants now move to strike and dismiss Whitehead's amended complaint pursuant to Fed. R. Civ. P. 12(f) and 12(b)(6). Specifically, defendants claim that ¶¶ 64, 68-93, 96-133 and 137 of the amended complaint (as well as portions of the RICO case statement) should be

1

stricken because Whitehead has included Gateway's confidential information in those paragraphs, violating an agreed protective order entered by Judge Bucklo in *Isaiah Beene v. Gateway Chevrolet, Oldsmobile, Inc.*, Case No. 02 C 830, Minute Order 7/11/2003, Doc. No. 26 (hereinafter, "*Beene* protective order"). Defendants further claim that Whitehead's amended complaint is fatally defective in the absence of the protected allegations. Finally, defendants request sanctions against Whitehead's attorney – Christopher V. Langone ("Langone") – pursuant to Fed. R. Civ. P. 37(b) for his violation of the *Beene* protective order.

## BACKGROUND

### I. Whitehead Transaction

Underlying Whitehead's RICO claim is her purchase of a 1996 Mercury Mystique from an unidentified Gateway employee on August 14, 1999. Compl. ¶ 16. Whitehead signed a retail installment sales contract to finance the car. *Id.* ¶ 16. According to Whitehead, the Gateway employee obtained financing for her contract by misrepresenting to Triad Financial that she made a $1000 down payment ("phantom down payment"). *Id.* ¶¶ 17, 63. In addition, Whitehead maintains that the Gateway employee falsely represented that the annual percentage rate ("APR") of interest would be 12.95%. *Id.* ¶¶ 16, 21-22, 63. Whitehead then signed a second retail installment sales contract many days later that set the APR at 20.50% after she was informed that the 12.95% rate was unavailable. *Id.* ¶¶ 21, 24. Whitehead maintains that an unnamed Gateway employee falsely back-dated the second contract. *Id.* ¶ 25. This second contract – "on information and belief" -- was then allegedly mailed and/or faxed to an unnamed finance company. *Id.* ¶ 26. Whitehead alleges that her name was forged on a title document by an unidentified Gateway title clerk. *Id.* ¶ 63.

2

## II. RICO Allegations

The predicate racketeering acts are not restricted to Whitehead. The amended complaint alleges purported predicate acts of mail fraud, wire fraud, financial institution fraud, and title forgery aimed at other Gateway consumers in a scheme to defraud them. The propriety of the overwhelming majority of those allegations is the subject of defendants' motion to strike. Whitehead contends that Gateway uses phantom down payments and title forgery in order to induce third party finance companies to finance retail installment contracts on behalf of consumers that they would otherwise reject, thereby binding consumers to economically disadvantageous contracts. In addition to those allegations that are the subject of defendants' motion to strike, Whitehead points to five other retail installment contract disputes involving Gateway, namely those of: (1) Donna Beene; (2) Isaiah Beene; (3) Jason Knight and Tiffany Peake; (4) Rose Tully; and (5) Pearlie Smith.

### A. Donna Beene

In January 2000, Donna Beene purchased a vehicle at Gateway from Scott Falcone, one of its finance managers. *Id.* ¶ 52. Beene, like Whitehead, entered into a retail installment sales financing contract that misrepresented she made a $1000 down payment. *Id.* ¶¶ 52-53. In fact, Beene made no down payment. *Id.* ¶ 53. Instead, Gateway knowingly accepted a bad check from Beene in the amount of $1000. *Id.* ¶ 53.

Gateway then purportedly mailed the contract to Triad Financial Corporation, a third party finance company, on January 31, 2000. *Id.* ¶ 53. At the same time, a Gateway title clerk, Barb Flores, forged Beene's name on a title document. *Id.* ¶ 55. According to Whitehead, Triad later learned about the phantom down payment, and required Gateway to re-purchase the

3

contract. *Id.* ¶ 56. Gateway then attempted to sell the contract to another finance company using "fraudulent means." *Id.* ¶¶ 57-58. Unable to do so, Gateway – through defendant Okimoto and at the behest of defendant Andrea – sent Beene a letter that stated "to avoid arrest you are instructed to return the vehicle immediately." *Id.* ¶ 58. Beene did not return the vehicle on advice of counsel. *Id.* ¶ 52.

Gateway repossessed the car. *Id.* ¶ 58. In order to sell the car to another customer, Gateway title clerk Stacy Scalise forged Beene's name on a title on October 14, 2000, and "used the mails to register the forged title . . . and sell the contract" to an unnamed finance company. *Id.* ¶ 59.

### B. Isaiah Beene

Within "several days" of Donna Beene's purchase, Isaiah Beene – her father – bought a car from Gateway. *Id.* ¶ 54. Like his daughter, Isaiah Beene signed a retail installment contract that misrepresented he made a $1000 down payment. *Id.* ¶ 54. In order to do so, Gateway used the personal check received from Donna Beene. *Id.* ¶ 54. Isaiah Beene's retail installment contract was purchased by Auto One, a finance company. *Id.* ¶ 54. Whitehead does not allege that Gateway used the mails or wires to effectuate Isaiah Beene's purchase.

### C. Jason Knight and Tiffany Peake

According to Whitehead, on May 17, 2001, Jason Knight and his friend Tiffany Peake went to Gateway after Knight spoke on the telephone with Gateway employee Sam Hamden. *Id.* ¶¶ 60-61. During that conversation, Hamden told Knight that he was approved for up to $500/month financing for a car purchase. *Id.* ¶ 60. Upon their arrival, Peake was asked – and agreed – to co-sign Knight's purchase agreement. *Id.* ¶ 61. However, the retail installment

contract was prepared with Peake identified as the primary buyer. *Id.* ¶ 61. According to Whitehead, the retail installment contract misrepresented the actual amount Gateway received as a down payment. *Id.* ¶ 61. Don Hund, a Gateway finance manager, purportedly used "the mails and wires to sell this contract" to a finance company, Consumer Portfolio Services. *Id.* ¶ 61. Like Whitehead and Beene, Knight and Peake's names were forged on the title. *Id.* ¶ 61. Whitehead further alleges that Hund "used the wires" to arrange for phone service for Peake and Knight at their residence, a prerequisite for obtaining financing, without their authorization. *Id.* ¶ 61.

**D.  Rose Tully**

Several months later, Rose Tully went to Gateway in July 2001, intending to co-sign a car purchase for a friend. *Id.* ¶ 49. According to Whitehead, an unidentified Gateway finance manager induced Tully to make false representations on her GMAC credit application due to her vulnerable state. *Id.* ¶ 49. As a result of these misrepresentations, Tully's purchase was approved. *Id.* ¶ 50. Immediately thereafter, Tully contacted Gateway to attempt to cancel the contract. *Id.* ¶ 50. Gateway refused. *Id.* ¶ 50. Tully then contacted a lawyer, and obtained a TRO from another judge of this court, preventing assignment of the contract to GMAC. *Id.* ¶¶ 50-51. In the interim, Gateway purportedly forged Tully's name on the title and attempted to register the vehicle. *Id.* ¶ 50. Whitehead does not allege that Gateway used the mails or wires in handling Tully's purchase.

### E. Pearlie Smith

According to Whitehead, Pearlie Smith went to Gateway on October 17, 2001, intending to co-sign a car purchase for her god-daughter Tonja Treadway. *Id.* ¶ 62. Instead of preparing the retail installment contract with Smith as co-signor, an unidentified Gateway employee listed Smith as primary buyer and sold the contract to Household, a finance company. *Id.* ¶ 62. When it learned Treadway, not Smith, was the primary buyer, Household forced Gateway to re-purchase the contract. Smith and Treadway sustained "out of pocket loss and credit damage." *Id.* ¶ 62. Whitehead fails to allege that Gateway used the mails or wires to sell the installment contract.

## DISCUSSION

### I. Motion to Strike

Preliminarily, Whitehead misunderstands the import of defendants' motion. Defendants do not seek dismissal of the amended complaint as a sanction under Rule 37(b). Rather, defendants' motion seeks to strike ¶¶ 64, 68-93, 96-133 and 137 of the amended complaint pursuant to Rule 12(f). Defendants' motion then seeks dismissal of the remainder of the amended complaint for failure to state a claim [Count I] pursuant to Rule 12(b)(6) and lack of subject matter jurisdiction [Count II] pursuant to Rule 12(b)(1). Accordingly, it is unnecessary to address arguments about the propriety of dismissal under Rule 37(b).

Rule 12(f) provides that a court, upon its own initiative or a motion by any party, "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Allegations in a complaint predicated on confidential information in violation of a protective order may be stricken under Rule 12(f). *DEV Industries,*

*Inc. v. Rockwell Graphic Systems, Inc.*, No. 91 C 7197, 1992 WL 100908 at * 2 (N.D. Ill. 1992) (striking portions of a complaint based upon confidential information in violation of protective order).

Defendants' motion to strike arises out of Langone's inclusion of Gateway's confidential information in ¶¶ 64, 68-93, 96-133, and 137 of Whitehead's amended complaint. Langone obtained this information during the course of his representation of plaintiff in *Isaiah Beene v. Gateway Chevrolet, Oldsmobile, Inc.*, Case No. 02 C 830. Langone, a signatory to the Beene protective order, agreed that "[n]either the confidential documents, in whole or in part or in any form, nor the information contained therein shall be used or disseminated except as intended in this litigation (Case No. 02 C 0830) only." Def. Mot. to Strike Ex. A ¶ 4. Langone does not challenge defendants' contention that ¶¶ 64, 68-93, 96-133 and 137 incorporate confidential information subject to the *Beene* protective order. Instead, he argues that:(1) the contractual legal principle of course of dealing allows for the use of the information in this litigation based on the informal agreement of the parties' counsel of record in the *Beene* litigation; (2) the *Beene* protective order requires Gateway to attempt informal resolution of this dispute prior to the filing of any motion; (3) the determination of whether the *Beene* protective order has been violated is solely for Judge Bucklo upon application by Gateway's counsel of record in that litigation; and (4) confidentiality was waived when defendants failed to object to the inclusion of the information in the RICO case statement. These arguments are groundless.

Langone's first argument is not supported by law or fact. He claims his use of Gateway's confidential information was proper in this case under the parties' course of dealing. *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 537 (1st Cir. 1993) ("[r]esolution of any dispute over the

7

protective order should be resolved under contract principles."). However, because the express terms of the protective order unambiguously prohibit the use of confidential information in ¶¶ 64, 68-93, 96-133 and 137, it is unnecessary to resort to course of dealing. *American Nat'l Trust Co. of Chicago v. Kentucky Fried Chicken of Southern California, Inc.*, 308 Ill.App.3d 106, 119, 719 N.E.2d 201, 210 (Ill. App. Ct. 1st Dist. 1999) (contractual terms must be accorded "their plain, ordinary, popular and natural meaning" and in the absence of an ambiguity "the intention of the parties . . . must be ascertained by the language utilized in the contract itself, *not by the construction placed upon it by the parties*") (citations omitted). In any event, the affidavit of Alison M. Harrington – Gateway's counsel of record in the *Beene* litigation – directly contradicts the course of dealing Langone suggests. Def. Reply Ex. A ¶ 5.

Langone's second argument also lacks merit. He contends that ¶ 12 of the *Beene* protective order required Gateway to confer informally regarding this dispute prior to filing a motion. However, as explained above, it is undisputed that the information incorporated into ¶¶ 64, 68-93, 96-133 and 137 is subject to the *Beene* protective order. Nothing in the plain and unambiguous language of the Beene protective order requires Gateway to seek resolution of Langone's violation of the protective order informally prior to filing this motion. The language of the protective order actually required Langone to seek an informal resolution under these circumstances, *i.e.*, where modification of the terms of the protective order is sought. Def. Mot. to Strike Ex. A ¶ 12 ("a party [is not precluded] from seeking and obtaining, on an appropriate showing, additional protection with respect to the confidentiality of documents, testimony, or other matters. A party to the action may obtain relaxation of the terms of this Order or challenge the designation of a document as confidential[.] However, the parties shall try first to dispose of

such disputes in good faith on an informal basis"). Langone failed to do so, choosing instead to flagrantly incorporate confidential information in the amended complaint in violation of the *Beene* protective order.

Contrary to Langone's third argument, this court has the authority to enforce the *Beene* protective order entered by Judge Bucklo. No other result is tenable. *DEV Industries, Inc.*, 1992 WL 100908 at * 2 (in strikingly similar circumstances, a judge of this court enforced a protective order issued by another judge of this court and struck portions of a complaint based on confidential information). Gateway is well within its right to protect its confidential information through its counsel, regardless of the identity of the specific attorney who signed the protective order or the judge of this court who issued the order.

Finally, this court rejects the notion that Gateway waived its right to enforce the *Beene* protective order by failing to object when Whitehead included the same information in her RICO case statement. Rule 12(f) authorizes this court to strike objectionable material on its own initiative at any time. Langone fails to provide any justification for the outright violation of the *Beene* protective order entered by Judge Bucklo.

Accordingly, ¶¶ 64, 68-93, 96-133 and 137 are stricken from the amended complaint. The following portions of the RICO case statement are stricken: (1) the first sentence on page 12; (2) the last two sentences on page 13; (3) the entirety of pages 14 through 16; (4) the entirety of page 17 with the exception of the last sentence; (5) the bulleted sentences on page 18; (6) the entirety of pages 19 through 22; (7) the bulleted sentences on page 22; (8) the first two sentences on page 23; and (9) the bulleted sentences on page 23. The issue of appropriate sanctions

pursuant to Rule 37(b) for Langone's violation of the *Beene* protective order will be referred to a magistrate judge for a report and recommendation.

## II. Motion to Dismiss

Defendants contend the amended complaint fails to state a RICO claim in the absence of the stricken allegations. For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996). Whitehead's RICO claim will not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Johnson Controls, Inc. v. Exide Corp.*, 132 F.Supp.2d 654, 657 (N.D. Ill. 2001) (quoting *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)) (citations omitted).

### A. RICO Claim

The RICO claim is directed against individual defendants Andrea, Dryzbek and Okimoto for violation of §1962(c), requiring Whitehead to establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lachmund v. ADM Investors Servs, Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). The heightened pleading standard of Federal Rule of Civil Procedure 9(b) requires allegations of fraud in a civil RICO complaint to be plead with particularity. *Id.* Defendants specifically target Whitehead's purported failure to allege the requisite "pattern of racketeering activity" in the absence of the stricken allegations. This is not surprising, given that "[i]nsufficiently pleading the 'crucial' element of pattern of racketeering activity 'rings the death knell' for RICO claims under § 1962." *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 52

10

F.Supp.2d 913, 917 (N.D. Ill. 1999) (citing *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 820 (7th Cir. 1991)).

Whitehead premises her RICO claim on defendants' commission of numerous "predicate acts" of title forgery in violation of 625 ILCS 5/4-105, financial institution fraud in violation of 18 U.S.C. § 1344, extortion in violation of 15 U.S.C. §1951, wire fraud in violation of 18 U.S.C. § 1343, and mail fraud in violation of 18 U.S.C. § 1341. However, Whitehead's allegations of title forgery, financial institution fraud, and extortion cannot serve as the requisite predicate acts for her § 1962(c) RICO claim. First, title forgery is not a delineated racketeering activity. 18 U.S.C. § 1961(1)(A) (defining racketeering activity to include only specific offenses under state law: "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical"). Second, only financial institutions have standing to allege violations of financial institution fraud under 18 U.S.C. § 1344 as predicate acts for RICO purposes. *Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553, 562 (N.D. Ill. 1998) (granting motion to dismiss RICO counts predicated on financial institution fraud in violation of § 1344 because plaintiffs – who were not financial institutions – lacked standing to bring RICO claim based on defendants' false statements to banks). Third, extortion for purposes of § 1951 requires the "*wrongful use* of actual or threatened . . . fear." 15 U.S.C. § 1951(b)(2) (emphasis added). The amended complaint does not allege why the particular letter sent to Beene was "wrongful." An extortionate act has not

been sufficiently pleaded.[1] *Cf. Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 318 (9th Cir. 1990) (complaint alleging that landlord who threatened to increase tenants' rent failed to sufficiently plead a predicate act of extortion for purposes of RICO because "[a]s a general rule, even if subject to some exceptions, what you may do in a certain event you may threaten to do, that is, give warning of your intention to do in that event, and thus allow the other person the chance of avoiding the consequences.") (citations omitted). The Beene letter merely states Gateway's intention to seek legal recourse for Whitehead's default. Whitehead's reliance on the transactions involving Isaiah Beene, Rose Tully and Pearlie Smith, as well as the so-called extortion of Donna Beene, are immaterial because no predicate acts of racketeering are alleged.

The only remaining predicate acts of racketeering activity – specifically mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 – arise out of the August 1999 transaction between Gateway and Whitehead, the January 2000 transaction between Gateway and Donna Beene, and the May 2001 transaction between Gateway, Knight and Peake. However, the allegations regarding mail and wire fraud in connection with Whitehead's transaction with Gateway are deficient under Rule 9(b). First and foremost, Whitehead cannot allege mail and wire fraud "on information and belief." *Emery v. American Gen. Fin., Inc.*, 952 F. Supp. 602, 604 (N.D. Ill. 1997) ("Allegations upon information and belief . . . are insufficient to allege fraud under Rule 9(b) even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for her suspicions."). Moreover, Whitehead fails to allege "the who, what, when and

---

[1] According to Whitehead, Okimoto's letter to Beene merely stated "that to avoid arrest you are instructed to return the vehicle immediately." Compl. ¶ 58. Whitehead's accusation that "[d]efendants engaged in a pattern of threatening consumers who do not return cars that were not financed with arrest for 'theft by deception' or other crimes" is immaterial. Simply put, Whitehead has not alleged that the threat was wrongfully levied at Beene.

where" of the alleged fraud. *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). In particular, Whitehead has not alleged the identity of the employee with whom she dealt regarding her retail installment contract, the date on which the second retail reinstallment contract was mailed or wired, or the identity of the finance company to whom the second retail installment contract was sent. In the absence of these allegations, the alleged mail or wire fraud committed against Whitehead must also be disregarded for purposes of determining whether the requisite pattern of racketeering activity has been alleged.

Only the transactions between Gateway and Donna Beene, as well as between Gateway, Knight and Peake, may be considered for purposes of determining whether Whitehead sufficiently alleges a pattern of racketeering activity. To effectuate those transactions, Gateway allegedly committed the following five violations of 18 U.S.C. §§ 1341 and 1343: (1) mail fraud on January 31, 2000 in the sale of Donna Beene's retail installment contract to Triad; (2) mail fraud on October 14, 2000 in connection with the forgery of Donna Beene's name on a title document and sale of a retail installment contract to unidentified finance company after repossessing the car; (3) wire fraud on May 17, 2001 in Sam Hamden's telephone conversation with Knight; (4) wire fraud on May 17, 2001 in Don Hund's telephone conversation with MIT to arrange phone service for Knight and Peake; and (5) mail and wire fraud on May 17, 2001 in connection with sale of the Knight and Peake retail installment contract to Consumer Portfolio Services.

The fact that Whitehead is able to allege multiple instances of mail and wire fraud over the course of two transactions is insignificant. The Seventh Circuit has long looked with disfavor upon reliance on mail and wire fraud in order to support a RICO pattern of racketeering activity:

13

> Mail fraud and wire fraud as perhaps unique among the various sorts of "racketeering activity" possible under RICO in that the existence of a multiplicity of predicate acts . . . may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailing does not necessarily translate into a "pattern" of racketeering activity.

*Sutherland v. O'Malley*, 882 F.2d 1196, 1205, n. 8 (7th Cir. 1989) (citations omitted); *see also Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 632 (7th Cir. 2001) ("'RICO plaintiffs are mistaken to emphasize the raw number of mail and wire fraud violations.'") (quoting *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1278 (7th Cir. 1989)). In *Pizzo*, plaintiff's allegations of several acts of mail and wire fraud were rejected for purposes of determining whether a pattern of racketeering activity existed. 258 F.3d at 632. Instead, the court determined that defendant had "only a single dispute with [plaintiff] . . . and likewise a single dispute with the other dissatisfied customer, making a total of only two 'acts' relevant to whether the defendants' behavior can be characterized as patterned." *Id.* Moreover, Whitehead's allegations of wire fraud are insufficiently pleaded under Rule 9(b). Whitehead fails to allege that the use of wires involved interstate communications. *American Auto. Accessories, Inc. v. Fishman*, 991 F.Supp. 987, 992, n. 5 (N.D. Ill. 1998) ("[t]he federal wire fraud statute extends only to interstate communications."). As in *Pizzo*, Whitehead's allegations of multiple acts of mail and wire fraud is immaterial; the transactions between Gateway and Beene, and Gateway, Knight and Peake, only constitute two predicate acts for RICO purposes.

These two predicate acts do not constitute a pattern of racketeering activity. A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). The Supreme Court has emphasized, however, that "the section 1961(5) requirement of two predicate acts is a minimum requirement and that, while two

14

may be necessary, two may not always be sufficient." *Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F.Supp. 1371, 1378 (N.D. Ill. 1996) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, n.14 (1985)). Sporadic activity does not form a pattern; instead, "a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239; *see also Sedima*, 473 U.S. 479, 496, n. 14 (1985). The relationship part of this "continuity plus relationship" test requires that the predicate acts be "committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc.*, 492 U.S. at 239 (quoting 18 U.S.C. § 3575(e)).

Continuity, on the other hand, "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. In evaluating closed-ended continuity, courts look to "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan*, 804 F.2d at 975. While duration must be shown to allege close-ended continuity, "open-ended continuity may satisfy the continuity prong of the pattern requirement regardless of its brevity." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994). Open-ended continuity is present under any of the following three circumstances: (1) a "specific threat of repetition" exists; (2) "the predicates are a regular way of

15

conducting [an] ongoing legitimate business;" or (3) the "predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Id.* (quoting *H.J., Inc.*, 492 U.S. at 242-43).

The amended complaint purportedly contains an array of predicate acts to support a pattern of racketeering activity. However, upon careful inspection, the overwhelming majority are wanting. The court is left with only two transactions – two predicate acts – involving the purchase of two cars occurring seven months apart.[2] While seemingly sporadic, these two acts arguably do share similar types of misconduct. Even so, the continuity portion of the "relationship plus continuity" test is not satisfied.

Two predicate acts involving two car purchases spanning a time frame of seven months are not sufficiently weighty to infer "closed-ended" continuity. *Pizzo*, 258 F.3d at 632 (closed-ended continuity test not met by allegations of two predicate acts over period of five months); *Vicom*, 20 F.3d at 780 (closed-ended continuity test not met by allegations of predicate acts over period of less than nine months); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (closed-ended continuity test not met by allegations of predicate acts over period of nine months); *Uni\*Quality, Inc.*, 974 F.2d at 923 (closed-ended continuity test not met by allegations of predicate acts over period of "at most seven to eight months"). None of the other *Morgan* factors (variety of predicate acts, the number of victims, the presence of separate schemes and the occurrence of distinct injuries) change this result. Whitehead relies solely upon mail and wire

---

[2]According to Whitehead, Donna Beene's transaction with Gateway was completed in October 14, 2000 when Gateway repossessed and sold the disputed car to another individual, and Knight and Peake's transaction with Gateway was completed in a single day, May 17, 2001. Thus, these transactions occurred seven months apart.

16

fraud for predicate acts. While two separate forms of fraudulent conduct are alleged (title forgery and phantom down payments), the victims[3] – Beene, Knight and Peake – did not sustain multiple economic injuries. Rather, each purported victim sustained a single economic injury, *i.e.*, contractual commitment to purchase a car. Whitehead's meager allegations do not support a finding of closed-ended continuity.

Nor are these acts sufficient to find "open-ended" continuity. In the absence of the stricken allegations, there is no evidence of a "specific threat of repetition" or that "the predicates are a regular way of conducting [an] ongoing legitimate business." *Pizzo*, 258 F.3d at 632 (no open-ended continuity shown from two commercial disputes five months apart despite allegations of multiple acts of mail and wire fraud). Because the third way to show "open-ended" continuity – that the "predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes" – is inapplicable here, Whitehead fails to show continuity. *H.J., Inc.*, 492 U.S. at 242-43. Accordingly, the RICO count [Count I] is dismissed for failure to state a claim upon which relief can be granted.

**B.    Fraud Claim**

Because the RICO claim is fatally defective, the court declines to exercise supplemental jurisdiction over Whitehead's common law fraud claim [Count II]. 28 U.S.C. § 1367(c)(3); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

---

[3] Whitehead's suggestion that the financial institutions are victims is rejected. Whitehead has alleged no specific economic injury to Triad Financial Corporation or Consumer Portfolio Services, the finance companies to whom the retail installment contracts of Beene, Knight and Peake were sold. Indeed, Whitehead admits that Triad Financial Corporation, Beene's finance company, simply had Gateway repurchase her retail installment contract when it discovered she had not made a down payment for the car.

17

## CONCLUSION

Defendants' motion to strike and to dismiss the first amended complaint is granted. The issue of appropriate sanctions pursuant to Rule 37(b) for violation of the *Beene* protective order is referred to the assigned magistrate judge for a report and recommendation.

January 30, 2004

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge